Center Street Fuel Company, Respondent, vs. Hanover Fire Insurance Company, Appellant.*

*February 9—March 6, 1956.*

* Motion for rehearing denied, with $25 costs, on May 1, 1956.

For the appellant there was a brief by *H. O. Wolfe* and *Wolfe, O'Leary & Kenney,* all of Milwaukee, and oral argument by *H. O. Wolfe.*

For the respondent there was a brief by *Hersh & Magidson* of Milwaukee, and oral argument by *Frederick Hersh.*

GEHL, J.   The case of the plaintiff rests principally upon the testimony of Mr. Kelling, its president. For that reason and also because it appears to us that the testimony does not support the trial court's determination, we deem it necessary to make rather extensive reference thereto.

Mr. Kelling testified: When plaintiff corporation received the policy he looked it over and was disturbed because under Item 1 which refers to the tank "it said 'nothing.' " He called a Mr. Kessler of defendant's local agency and told him that he was "disturbed because the policy did not cover the tank and equipment at all." Kessler said that is easily corrected, how much coverage do you want on it? We agreed on an amount of $2,000. He also asked Kessler to increase the coverage under Item 2 to $2,000. As a result of this telephone conversation plaintiff received Exhibit 3. On cross-examination he repeated that when the policy was received he noticed that it provided coverage only on contents and not on the tank; he called Kessler on the telephone and told him

that he was disturbed because the word "nothing" appeared, that he wanted coverage on the tank as well as on the contents; that he wanted $2,000 on the tank and $2,000 on the contents; the amendment, Exhibit 3, which he received, was in substantial compliance with what he asked for. On redirect examination he testified that in none of the discussions with Kessler did they ever distinguish between the pump house and the oil tank.

It will be observed that Mr. Kelling's concern when the original policy was received was with the fact that he found that the tank was not covered, that it was only that fact and the fact that he desired coverage of $2,000 instead of $1,000 on contents which he discussed with Kessler. He is in no position to say that he paid no attention to the amending indorsement when he received it; he must have read it, observed its contents, and have seen that it would cover only the tank and not the pump house, for he testified that it was in substantial compliance with what he had asked Kessler for. He does not say that in any discussion which he had with Kessler the matter of the pump or pump house was ever referred to. It was not established that defendant's representatives knew that the tank was connected with a pump nor are the circumstances such as to charge them with knowledge that it was so connected. It is true that Kelling testified that he told Kessler before the amending indorsement was issued that the policy which he had received did not cover the tank and equipment at all, but that fact does not overcome the abundantly convincing testimony that when his company received the amending indorsement, it received exactly what he had asked for.

We are aware of the rule that where reformation is sought a distinction is made between ordinary contracts and contracts of insurance, and that less is required in cases dealing with the latter. The rule does not operate, however, to relieve one who seeks reformation of an insurance contract of the

duty to establish that the policy which he receives does not contain provisions then desired by him, that such failure resulted from a mutual mistake, and that both parties intended to make a different instrument. If it be assumed, which we do not, that Kelling made a mistake, there is still an utter lack of proof that defendant's representative in preparing the amending indorsement made a different instrument than he intended to.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.